Filed 12/7/23  P. v. Torres CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERICK TIMOTHY TORRES,<br><br>Defendant and Appellant. | F084941<br><br>(Super. Ct. Nos. BF183899A,<br>BF184509A)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

Defendant Erick Timothy Torres was convicted of assault with a deadly weapon, arson of an inhabited dwelling, kidnapping, and several other offenses. Defendant contends the trial court erred in failing to dismiss all enhancements beyond a single enhancement. Defendant also contends the court violated his right to due process by imposing fines and fees without determining his present ability to pay pursuant to *Dueñas*.[1] Defendant further argues that if the issue of his ability to pay was forfeited by defense counsel's failure to object, he received ineffective assistance of counsel.

The People respond that the trial court retains discretion to impose a sentence enhancement where doing so is in the interest of justice. The People also argue that defendant forfeited any *Dueñas* argument by failing to object or present evidence of an alleged inability to pay his fines and fees. Alternatively, the People argue the imposition of fines and fees was harmless but if the court finds a due process violation, the proper remedy is to remand for defendant to request a hearing on his ability to pay.

We affirm.

## PROCEDURAL SUMMARY

### A.  Case No. BF183899A

On May 19, 2022, the Kern County District Attorney filed an amended information charging defendant with:  attempted murder of Larry C. (Pen. Code,[2] §§ 664, 187, subd. (a); count 1); arson of an inhabited structure or property (§ 451, subd. (b); count 2); kidnapping (§ 207, subd. (a); count 3); making criminal threats (§ 422; count 4); assault with a deadly weapon on Sam M. (§ 245, subd. (a)(1); count 5); attempted arson (§ 455, subd. (a); count 6); arson of property (§ 451, subd. (d); count 7); two counts of unlawful possession of an explosive device (§ 18740; counts 8 and 9); and misdemeanor resisting arrest (§ 148, subd. (a)(1); count 10). The information further alleged

---

[1]     *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

[2]     All further statutory references are to the Penal Code unless otherwise stated.

enhancements for use of an explosive device on count 1 (§ 189), using an accelerant on count 2 (§ 451, subd. (a)(5)), and personal use of a deadly or dangerous weapon on counts 2 and 4 (§ 12022, subd. (b)(1)).

On August 4, 2022, the jury found defendant not guilty of attempted murder on count 1 but guilty of the lesser included offense of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found defendant guilty on all other counts and found true the enhancements alleged on counts 2 and 4. The jury also found true the following aggravating circumstances: California Rules of Court,[3] rule 4.421(a)(1) and (2) as to counts 1 through 9; rule 4.421(a)(3) as to counts 1 through 6, 8, and 9; and rule 4.421(a)(8) as to counts 1, 2, and 6 through 9.[4]

On September 1, 2022, in a bifurcated bench trial, the trial court found true the aggravating circumstances per rule 4.421(b)(1), (2), (3) and (4).[5] On the same day, the court sentenced defendant to 15 years as follows: on count 2, five years (the middle term) plus five years for the use of an accelerant and one year for personal use of a deadly weapon; on count 3, one year eight months (one-third of the middle term) to be served consecutively to the term on count 2; on count 7, eight months (one-third of the middle term) to be served consecutively to the term on count 3; on count 9, one year eight months (one-third of the middle term) to be served consecutively to the term on count 7; and on count 10, concurrent term of one year in county jail. The court also imposed fines and fees totaling $1,000 as follows: $400 for 10 court operations assessment fees in the amount of $40 each (§ 1465.8, subd. (a)(1)); $300 for 10 court facilities assessment fees in the amount of $30 each (Gov. Code, § 70373, subd. (a)); and

---

[3] All further rule references are to the California Rules of Court.

[4] The prosecution alleged aggravating circumstances under rule 4.421 in a supplemental motion filed on May 18, 2022.

[5] Defendant waived a jury trial and requested a bifurcated bench trial regarding these aggravating circumstances.

a $300 restitution fine (§ 1202.4, subd. (b)(1)). The court also imposed but suspended a $300 parole revocation restitution fine (§ 1202.45).

## B.     Case No. BF184509A

On April 5, 2021, the Kern County District Attorney filed an information charging defendant with:  assault with a deadly weapon on Bruce J. (§ 245, subd. (a)(1); count 1); making criminal threats (§ 422; count 2); second degree robbery (§ 212.5, subd. (c); count 3); and assault with a firearm on Bruce J. (§ 245, subd. (a)(2); count 4).  The information further alleged defendant personally used a deadly weapon as to count 2 (§ 12022, subd. (b)(1)), personally used a firearm as to counts 3 and 4 (§ 12022.5, subd. (a)), and personally used a firearm in the commission of a robbery as to count 3 (§ 12022.53, subd. (b)).

On September 1, 2022, defendant pled no contest to a newly added count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 5) in exchange for dismissal of the remaining counts and enhancements pursuant to a plea agreement.  On the same date, the trial court sentenced defendant to the upper term of four years on count 5 to be served concurrently with the sentence on case No. BF183899A.  All other counts and enhancements were dismissed on the prosecutor's motion.  Defendant was ordered to pay $370 in fines and fees as follows:  $40 for the court operations assessment fee (§ 1465.8, subd. (a)(1)); $30 for the court facilities assessment fee (Gov. Code, § 70373, subd. (a)); and a $300 restitution fine (§ 1202.4, subd. (b)(1)).  The court again imposed but suspended a $300 parole revocation restitution fine (§ 1202.45).

Defendant filed a timely notice of appeal.[6]

---

[6]     The notice of appeal filed only referenced case No. BF183899A.  On January 4, 2023, defendant filed a motion for constructive notice of appeal to include case No. BF184509A.  The People did not file an opposition to defendant's motion.  On

A.      **Case No. BF183899A[7]**

On January 12, 2021, defendant broke Larry C.'s backyard fence and threw two Molotov cocktails through Larry's bedroom window. Larry and Hope B. were in the bedroom when the Molotov cocktails came through the window. The resulting fire caused damage to the bedroom walls, the curtains, and a chair. The Bakersfield Fire Department fire investigator concluded that the gasoline inside the Molotov cocktails enhanced the fire and created two points of origin. Later that same day, defendant also set fire to a truck.

Later that day, Sam M., a mail carrier, was in the back of his mail truck when he heard a bang on the side of the truck. Defendant was outside the truck with a bandana covering his face and head. Defendant had a metal pole and a container of black pepper in one hand, and a clothing iron in the other hand. Defendant said to Sam, " 'You're going to give me a f**king ride.' " Defendant told Sam if he did not give him a ride, Sam "was going to die." Defendant then said to Sam he "was going to f**k up [his] life." Sam told defendant there was no seat in the truck for him. Defendant said he would climb in the back with the mail parcels. Defendant climbed in the back and closed the truck's door. Sam got into the truck's driver's seat.

Another car pulled up next to the mail truck and the car's driver asked Sam if he was getting robbed. Defendant told the driver to "mind his business" and Sam to drive. Sam complied. Defendant told Sam he could drop defendant off behind the mall. The other car who saw the robbery was following Sam's mail truck. Defendant was trying to

---

February 14, 2023, we issued an order granting defendant's motion. Both cases are addressed by this opinion.

**7**      We provide limited facts for both cases because the facts of defendant's offenses are not relevant to the issues raised on appeal.

lose the car by telling Sam to speed up and make quick turns. After driving a few miles, defendant told Sam to stop, and defendant got out of the truck.

On January 14, 2021, two days later, video surveillance caught defendant setting fire to a car in Larry's driveway. Larry put the fire out with a water hose. The fire damaged the car's front passenger area. Defendant also threw a Molotov cocktail through a bedroom window of Larry's house, but it did not cause any fire damage.

Shortly after, Bakersfield Police officer Austin Haycock arrived at Larry's house and defendant ran away when he saw Haycock. Haycock identified himself as a police officer and shouted for defendant to stop but defendant continued to flee. Haycock chased after defendant on foot. At one point, defendant walked between two vehicles toward Haycock. Defendant did not comply with Haycock's demands, so Haycock deployed his taser on defendant. Haycock and another officer then handcuffed and arrested defendant.

Defendant testified at trial that he blacked out on the dates of these offenses because he was on PCP and did not remember much.

## B.  Case No. BF184509A[8]

On November 27, 2020, defendant approached Bruce J. with a knife and told Bruce he was going to kill him. Defendant swung the knife at Bruce twice. Bruce dropped his bike and wallet on the ground but asked defendant not to take these items. Defendant pulled out a revolver and pointed it at Bruce. Defendant told Bruce to back away or defendant was going to kill him, while still pointing the revolver at Bruce. Bruce went behind a vehicle for safety. Defendant took Bruce's bike and wallet.

---

[8]    The facts in case No. BF184509A are taken from testimony given at the preliminary hearing. The parties stipulated that there is a factual basis for defendant's plea in this case based on "either the preliminary hearing transcript and/or law enforcement reports."

**DISCUSSION**

## I.    Senate Bill No. 81

Defendant contends the trial court erred by failing to dismiss all but a single enhancement in case No. BF183899A pursuant to section 1385, as amended by Senate Bill No. 81 (2021−2022 Reg. Sess.) (Senate Bill 81).  Defendant argues because three enhancements were alleged and found true (one for accelerant use and two for use of a deadly weapon), the court was required to dismiss two of these enhancements per section 1385, subdivision (c)(2)(B).  The People respond that despite changes to section 1385 wrought by Senate Bill 81, the court retains its discretion to impose enhancements if doing so is in the interest of justice, and was therefore not required to dismiss two of the three enhancements.[9]

### A.    *Sentencing*

The trial court held a sentencing hearing on September 21, 2022.  Defense counsel argued in mitigation that although defendant had a criminal record, he had not previously done something like arson, kidnapping, or anything involving violence.  Defense counsel also argued that no one was injured in these crimes, there was a lack of sophistication in the crimes' implementation, and the supporting letters showed defendant was "not a lost cause."  The low term for a total of 11 years was requested by defense counsel.  The prosecution argued for the term of 18 years as recommended by probation, based on the lack of mitigation and the aggravating factors found true by the jury and the court.

In imposing the sentence, the trial court stated that defendant "had some things happen to [him] at a young age that have affected [him] and [he] also ha[s] a serious drug problem that's been going on for a long time.  And a lot of [his] behavior has been related to that.  [He is] still responsible for [his] actions.  [The court is] still going to sentence

---

[9]    The People do not argue that defendant forfeited challenge to imposition of more than one enhancement by failing to object at the time of sentencing and we do not address the issue of forfeiture.

[him] to prison. [¶] But [his] acts were extremely dangerous." The court then imposed defendant's sentence, including one enhancement for use of an accelerant on count 2 (§ 451, subd. (a)(5)), and two enhancements for personal use of a deadly weapon on counts 2 and 4, respectively (§ 12022, subd. (b)(1)). The deadly weapon enhancement was stayed on count 4 per section 654.

## B. Applicable Law

Effective January 1, 2022, Senate Bill 81 amended section 1385 to specify mitigating circumstances the trial court must consider in determining whether to dismiss an enhancement. (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c) now provides in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.
>
> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The statute outlines nine mitigating circumstances the court must consider, including as relevant herein: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B), (C).) Subdivision (c) of section 1385 applies to all sentences occurring after its effective date. (§ 1385, subd. (c)(7).)

8.

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387, superseded by statute on another issue.) We review questions of statutory interpretation de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

Several of our sister courts have persuasively concluded that the "shall be dismissed" language in subdivision (c)(2)(B) and (C) of section 1385 does not require the trial court to dismiss an enhancement if doing so would endanger public safety. (*People v. Walker* (2022) 86 Cal.App.5th 386, 396–398 (*Walker*), review granted Mar. 22, 2023, S278309; *People v. Anderson* (2023) 88 Cal.App.5th 233, 238–241 (*Anderson*), review granted Apr. 19, 2023, S278786; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17–21 (*Lipscomb*); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295–297 (*Mendoza*).)[10]

In *Walker*, the court of appeal acknowledged that "on its face and considered in isolation, the phrase 'all enhancements beyond a single enhancement shall be dismissed' seems to fairly unambiguously dictate that, if there is more than one enhancement, all but one 'shall' be dismissed." (*Walker*, *supra*, 86 Cal.App.5th at p. 396.) Yet the court further recognized this phrase "is not a standalone mandate of section 1385." (*Id*. at p. 397.) Instead, it is "appended to one of the nine mitigating circumstances" in

---

[10]    This court also recently concluded section 1385, subdivision (c)(2)(B) does not mandate dismissal of all enhancements beyond a single enhancement. (*People v. Cota* (Nov. 17, 2023, F085451) __ Cal.App.5th __ [2023 Cal. App. LEXIS 890].)

section 1385, subdivision (c)(2), and specifically, to the circumstance when " '[m]ultiple enhancements are alleged in a single case.' " (*Ibid.*)  Because section 1385 "explicitly instructs that the existence of a mitigating circumstance—including the one for 'multiple enhancements'—'weighs *greatly* in favor of dismiss[al],' " interpreting "the phrase appended to the multiple enhancements mitigating factor as *automatically* mandating dismissal of all but one enhancement whenever multiple enhancements exist, then the existence of multiple enhancements would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively.*"  (*Ibid.*)[11]  However, "that is not what the statute says" and courts "are not allowed to rewrite the statute."  (*Ibid.*)

In *Anderson*, another division of the *Walker* court similarly concluded that the phrase "shall be dismissed" in section 1385 cannot be read in isolation.  (*Anderson, supra*, 88 Cal.App.5th at p. 239.)  The *Anderson* court found that this phrase "appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so' " per section 1385, subdivision (c)(1).  (*Ibid.*) Accordingly, "the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice."  (*Ibid.*)  The court held "[t]his language, taken

---

[11]     The Courts of Appeal are split regarding how to construe and apply the requirement to "afford great weight" to evidence of the mitigating circumstances. (§ 1385, subd. (c)(2); see *Walker, supra*, 86 Cal.App.5th at p. 398 ["[T]rial courts are to rebuttably presume that dismissal of an enhancement is in the furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal 'would endanger public safety.' "]; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1097–1098, review granted Apr. 12, 2023, S278894 [disagreeing with the analysis in *Walker* that affording " 'great weight' " to the mitigating circumstances creates a rebuttable presumption].)  In granting review in *Walker*, our Supreme Court requested briefing on the following:  "Does the amendment to … section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*People v. Walker*, S278309, Sup. Ct. Mins., Mar. 22, 2023 [2023 Cal. LEXIS 1459] <https://supreme.courts.ca.gov/case-information/minutes> [as of Dec. 7, 2023].)  The disputed statutory language does not affect our analysis here.

together, explicitly and unambiguously establishes:  the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Ibid*.)

Both *Lipscomb* and *Mendoza* similarly held that the language "the enhancement shall be dismissed" where "application of an enhancement could result in a sentence of over 20 years" per section 1385, subdivision (c)(2)(C), does not require the trial court to dismiss an enhancement if doing so would endanger public safety.[12]  The *Lipscomb* court understood it "cannot read [parts of the statute] in isolation" but "must consider the statute as a whole." (*Lipscomb*, *supra*, 87 Cal.App.5th at p. 18.)  In doing so, the circumstance "that the enhancement could produce a sentence over 20 years … does not apply at all where the court finds that striking the enhancement would endanger public safety." (*Ibid*.)  The court determined that "[t]o the extent that the statute is ambiguous, indicators of the Legislature's intent support [this] reading" because the "versions of [Senate Bill 81] confirm the Legislature's intent that the trial court retain the ability to impose an enhancement where failure to do so would endanger public safety." (*Id*. at pp. 18–19.)  Following review of the various versions considered by the Legislature in enacting Senate Bill 81, the *Lipscomb* court concluded that "every version of the statute—including … the current one—expressly empowered the court to impose the enhancement upon a finding that dismissing it would endanger public safety." (*Id*. at p. 19.)

In *Mendoza*, the court of appeal noted that interpreting section 1385, subdivision (c)(2)(C) as requiring dismissal of an enhancement "gives no effect to the

**12**     Section 1385, subdivision (c)(2)(C) is not applicable to defendant's sentence because his aggregate sentence is less than 20 years.  We discuss *Lipscomb* and *Mendoza* because they interpret similar statutory language and defendant cites these cases among those purportedly wrongly decided in interpreting Senate Bill 81.

11.

clause 'unless the court finds that dismissal of the enhancement would endanger public safety' " in section 1385, subdivision (c)(2). (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.) The court recognized it must "avoid interpretations that render statutory language surplusage" and "also must avoid interpretations that lead to absurd results." (*Ibid*.) Under defendant's interpretation, "*the statute required the sentencing court to endanger public safety*," which the court found "cannot be what the Legislature intended." (*Ibid*.)

## C. Analysis

Defendant argues *Walker*, *Anderson*, *Lipscomb*, and *Mendoza* were wrongly decided. Specifically, he argues it was error for the *Walker* court to "go beyond [the statute's] unambiguous plain language" and consider how the language fits into the statute as a whole.

This argument defies long-standing canons of statutory construction. "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898.) "In order to determine this intent, we begin by examining the language of the statute." (*Id*. at p. 898.) But "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*Id*. at p. 899.) The *Walker* court correctly recognized that courts "are not permitted to pluck [a] phrase out of its placement in the statute and consider it in isolation." (*Walker*, *supra*, 86 Cal.App.5th at p. 396.) Construing "shall be dismissed" in section 1385, subdivision (c)(2)(B) "to mandate a rule of automatic dismissal of all but one enhancement whenever multiple enhancements are alleged … would hinge upon reading the phrase in isolation, but the canons [of statutory construction] counsel against that." (*Id*. at p. 398.) This construction would also require "accept[ing] that our Legislature—rather than having a standalone section that says: 'If there's more than one enhancement, automatically dismiss all but one'—instead opted to embed that mandate as an addendum to one of nine mitigating

12.

factors to be given great weight in the context of a trial court's discretionary decision whether to dismiss." (*Ibid.*) We generally presume our Legislature does not take a circuitous route "to achieve its purpose, which counsels against construing statutes to have a meaning that requires more complex linguistic gymnastics to reach." (*Ibid.*)

Defendant essentially argues the *Walker* court was precluded from engaging in judicial construction of the statute once it concluded "shall be dismissed" was unambiguous language. This is incorrect. "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) Even in the case cited by defendant, the Supreme Court stated that "if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose. [Citation.] We need not follow the plain meaning of a statute when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) The statute's "intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the" statute. (*Lungren*, at p. 735.)

Per these established rules of statutory construction, the *Walker* court considered the purpose of Senate Bill 81 in interpreting section 1385, subdivision (c)(2)(B). The court found that "the plain text of section 1385 repeatedly emphasizes[] its purpose is to grant trial court[s] *discretion* to dismiss enhancements. And the purpose of [Senate Bill 81], as reflected in the Legislative Digest, is to encourage exercise of that discretion by making dismissal mandatory if it is in the furtherance of justice to do so, and to specify the mitigating circumstances that are to be given great weight in that exercise of discretionary balancing." (*Walker*, *supra*, 86 Cal.App.5th at p. 397.) Because defendant's interpretation *eliminates* the trial court's discretion by making dismissal of

13.

more than one enhancement obligatory rather than discretionary, this interpretation conflicts with the purpose of Senate Bill 81.

Defendant argues "it would strain credulity" for the People to argue the language of section 1385, subdivision (c)(2)(B) is the result of a drafting error because Senate Bill 81 was passed in 2021, and further changes were made to section 1385 in 2022 without correcting any purported error in this subdivision.[13] The People do not argue this language resulted from a drafting error. Instead, the People argue, and we agree, that the statute's language cannot be considered in isolation or interpreted in a way that renders other statutory language surplusage and must be construed in a way that remains mindful of the legislative intent in enacting Senate Bill 81. As discussed above, that is precisely what our sister courts did in concluding the "shall be dismissed" language in subdivision (c)(2)(B) and (C) of section 1385 does not require the trial court to dismiss an enhancement if doing so would endanger public safety. (*Walker*, *supra*, 86 Cal.App.5th at pp. 396–398; *Anderson*, *supra*, 88 Cal.App.5th at pp. 238–241; *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17–21; *Mendoza*, *supra*, 88 Cal.App.5th at pp. 295–297.)

In conclusion, subdivision (c)(2)(B) of section 1385 does not mandate the trial court dismiss all enhancements beyond a single enhancement where the court finds doing so would endanger public safety. The court thus retains discretion to dismiss enhancements. The court here impliedly found dismissing the enhancements would endanger public safety by noting at sentencing that defendant's "acts were extremely dangerous" and declining to dismiss the enhancements. We discern no basis to disturb

---

**13** Prior to passage of Assembly Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill 200), subdivision (c)(3) of section 1385 was codified before the mitigating circumstances outlined in subparagraphs (A)–(I) of subdivision (c)(2), which was understood to be a clerical error. (*People v. Sek* (2022) 74 Cal.App.5th 657, 674, fn. 7.) Assembly Bill 200 amended section 1385 to move the mitigating circumstances from subdivision (c)(3) to subdivision (c)(2)(A)–(I), effective June 30, 2022. (Stats. 2022, ch. 58, § 15.)

14.

the court's findings.  Defendant does not argue that the court abused its discretion in declining to strike all but one of the enhancements and we do not consider the issue.

**II.        Challenge to Assessment Fees and Restitution Fines**

Defendant argues the trial court's imposition of $1,370 in assessment fees and restitution fines without determining his ability to pay violated his federal and state constitutional rights to due process pursuant to *Dueñas*.  The People argue defendant forfeited this claim when he failed to object to the fees and fines during sentencing.  The People further argue the claim fails because the fees and fines were not excessive and did not violate defendant's right to due process, but if there was a due process violation, the proper remedy is to remand to give defendant the opportunity to request a hearing regarding his ability to pay.

**A.        *Imposition of Assessment Fees and Restitution Fines***

Defendant was convicted on 10 counts in case No. BF183899A and one count in case No. BF184509A.  The trial court imposed the minimum $300 restitution fine (§ 1202.4, subd. (b)(1)) in each of defendant's two cases for a total of $600.  The court also imposed the required fees for defendant's 11 convictions:  $330 in court facilities assessment fees at $30 for each conviction (Gov. Code, § 70373, subd. (a)) and $440 in court operations assessment fees at $40 for each conviction (§ 1465.8, subd. (a)(1)).  The aggregate amount of fines and fees imposed for both cases was $1,370.  Defendant did not object to the court's imposition of fines and fees at sentencing, nor did he request a hearing to address his ability to pay.

**B.        *Applicable Law and Analysis***

In *Dueñas*, the court of appeal held "that due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes" any fines or fees.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) Subsequent to *Dueñas*, the same court held that "a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be

15.

imposed ….” (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)

*Dueñas* was decided in January 2019, more than three years before defendant was sentenced in September 2022. Defendant did not request a hearing on his ability to pay or object to the fees and fines imposed by the trial court. Failure to object before the court generally forfeits the issue on appeal and this principle applies equally to constitutional claims like those raised by defendant. (*People v. McCullough* (2013) 56 Cal.4th 589, 593 [a constitutional right may be forfeited by failure to assert the right before the tribunal with jurisdiction to determine it]; accord, *United States v. Olano* (1993) 507 U.S. 725, 731–732.) Furthermore, “[i]n general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal.” (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624.) This is particularly true in cases like this where sentencing occurred after the *Dueñas* court declared a constitutional right to have courts determine ability to pay prior to imposing mandatory fines and fees. (*Greeley*, at p. 624.) Further, although the court imposed the minimum restitution fine authorized by statute, which expressly precludes consideration of a defendant’s ability to pay as a basis for waiving the fine (see § 1202.4, subd. (c)), we cannot say with confidence that an objection to the restitution fine on constitutional grounds would have been futile in light of *Dueñas* having been decided more than three years prior to sentencing in this case. (See *People v. Welch* (1993) 5 Cal.4th 228, 237 [“Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.”].) Defendant’s claim is forfeited, and under the circumstances, we decline to depart from the rule of forfeiture.

Defendant argues his claim is not forfeited because “this is a ‘pure question of law’ ” that can be adjudicated without reference to the record below. An exception to the rule of forfeiture is when a defendant raises constitutional claims on appeal that “involve pure questions of law that can be resolved without reference to the particular sentencing

16.

record developed in the trial court." (*People v. Welch*, *supra*, 5 Cal.4th at p. 235.) While our Court has previously been divided on the issues of forfeiture where there was no opportunity to object because *Dueñas* (or Eighth Amendment cases) had not yet issued at the time an objection would have been timely made (e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107, 1119–1121 [forfeiture excused where futile or unsupported by existing law]; *People v. Son* (2020) 49 Cal.App.5th 565, 596–598; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1054; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073–1074), we are in agreement that the question of ability to pay is a fact-intensive inquiry and not a pure question of law (*Montes*, at p. 1121; *Son*, at p. 591; *Lowery*, at pp. 1060–1061; *Aviles*, at pp. 1074–1076).

Defendant contends his *Dueñas* claim is cognizable because the trial court failed to exercise its discretion by imposing the fines and fees without determining his ability to pay. " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, … the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) However, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

As previously noted, *Dueñas* was decided more than three years before defendant was sentenced, and the record does not reflect the trial court was unaware of its discretion. The cases cited by defendant where the court based its sentencing choice on an erroneous understanding of its discretion are inapposite. (See, e.g., *People v. Downey*

17.

(2000) 82 Cal.App.4th 899, 912 [remand was required where the court based its sentencing decision on an erroneous understanding of the law].)  Therefore, defendant's claim that the court failed to exercise its discretion fails.

We also reject defendant's argument that his *Dueñas* claim is cognizable because the trial court's imposition of fines and fees without determining his ability to pay constitutes an unauthorized sentence.  (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "[O]bvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable."  (*People v. Smith* (2001) 24 Cal.4th 849, 852.)  *Dueñas* did not hold that a restitution fine can never be imposed, only that doing so mandates the People first demonstrate defendant's ability to pay.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1172.)  The fines were not an unauthorized sentence.  (*People v. Avila* (2009) 46 Cal.4th 680, 729.)

Defendant argues in the alternative that trial counsel provided prejudicially ineffective assistance of counsel by failing to object to the trial court's imposition of fines and fees pursuant to *Dueñas*.

To prevail on an ineffective assistance of counsel claim, defendant must prove: (1) trial counsel's performance was deficient and (2) counsel's deficient performance prejudiced defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  To show prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Id*. at p. 694.)

Defendant argues without detail that if defense counsel had made a *Dueñas* objection, there "is a reasonable chance" the trial court would have reduced or stricken his fines and fees.  " ' "Ability to pay does not necessarily require existing employment or cash on hand."  [Citation.]  "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability

18.

but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to … earn money after his release from custody. [Citation.]' " (*People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) Defendant is 43 years old and the record does not indicate an inability to work. Wages in California prisons currently range between $12 and $56 per month. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) Half of these wages will be deducted to be paid towards any restitution fine. (§ 2085.5, subd. (a); Cal. Code. Regs., tit. 15, § 3097, subd. (f).) The record does not show defendant will be unable to pay back his restitution fines. If he earns $56 per month, his restitution fines will be paid in approximately three years of his 15-year sentence. Defendant has not shown a reasonable probability of a different outcome if his attorney made a *Dueñas* objection, and we reject his ineffective assistance of counsel claim.

## DISPOSITION

The judgment is affirmed.